CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 12 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| CARLTON J. GOUGH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 6:07cv018 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant | ) |

## REPORT AND RECOMMENDATION

In this appeal of a denial of social security disability benefits, Carlton J. Gough ("Gough") contends that he was disabled prior to December 31, 2002 due to degenerative problems with his hips. Scant evidence supports Gough's claim of total disability before that date. After the decision of the Administrative Law Judge ("ALJ") denying benefits, Gough submitted additional evidence to the Appeals Council, which considered the evidence but did not include it in the administrative record. That evidence consists of a right hip replacement operative record and a psychological assessment from 2006. Because this evidence does not establish that the problems with Gough's hips constituted an impairment imposing a significant work-related limitation of function prior to 2003, there is no reasonable possibility that this evidence would have changed the outcome. As such, it is Recommended that the decision of the Commissioner be affirmed.

### I.

A reviewing court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.

1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## II.

Gough left school in the seventh grade and his primary work consisted of cutting pulp wood. (Administrative Record [hereinafter "R."] at 209, 212) His date last insured was December 31, 2002, meaning that he must establish disability on or before that date to be eligible for disability insurance benefits. Gough asserts that his onset date was July 31, 2001. (R. 21) Gough was awarded supplemental security income benefits as of August 1, 2004. (R. 21)

Gough's application for social security benefits focuses entirely on problems with his hips. Many years ago, Gough sustained a gunshot wound to his left hip. Gough was seen by Central Virginia Health Services, Inc. in late 1996 and early 1997, complaining of right hip pain. The medical records suggest that this pain was attributable to "severe DJD [degenerative joint disease], probably secondary to compensation from left hip deformity." (R. 168) Gough received an injection which resulted in some improvement. A January 21, 1997 medical note indicated

2

that "Will make referral to ortho, he seems only slightly disabled in that still able to walk at the lumber yard but with frequent times that he needs to stop and rest." (R. 168) Although the note refers to an orthopedic referral, there is no indication in the record that such a referral occurred.

In April 1998, Gough was hospitalized for a left hip infection, and his treatment consisted of a series of irrigation and debridement procedures and bone grafting undertaken at UVa Medical Center. (R. 124-27) In July, 1998, Gough was seen in a follow up visit, at which time he reported that he was "doing well except he has some hip pain and some knee pain." (R. 162) Gough was continued on oxycodone for left hip pain and his left knee was injected. There are no records of any treatment concerning Gough's hips for nearly three years, until February 1, 2001.

The medical note from the visit to Central Virginia Health Services, Inc. on February 1, 2001 is difficult to read, but appears to indicate that his right hip and knee pain have become progressively worse, that the pain is temporarily reduced with over the counter pain medications, and that he ambulates fine. Gough was diagnosed with right hip DJD and right trochanteric bursitis,[1] for which he received an injection. Gough was seen twice more in 2001, but neither visit concerned his hips. (R. 144-45, 159-60)

Gough was next seen about his right hip on May 4, 2004, more than three years after his last medical visit concerning his hips. Gough reported that he "has had this pain intermittently over the past few years and it has worsened." (R. 158) Gough was noted to be in mild distress, had tenderness and restricted movement over the right hip, and was referred to orthopedics. An x-ray taken on May 5, 2004 noted advanced degenerative changes of the right hip. (R. 142)

---

[1] Trochanteric bursitis is inflammation of the bursa, or lubricating sac, surrounding the knobby processes below the neck of the femur.

3

Unlike the years preceding his date last insured, Gough was treated fairly regularly for right hip pain over the next year. During this period, Gough was seen in consultation by an orthopedist at the UVa Medical Center, Dr. Linda Staiger, who indicated that Gough was unable to work because of bilateral hip problems. (R. 179) In Dr. Staiger's initial consultation note dated July 12, 2005, she noted that Gough had been having trouble with his hip for "two or three years." (R. 179) Over the next year, the medical records noted discussions with Gough concerning right hip replacement surgery, which was performed on April 10, 2006.

Between July, 1998 and May, 2004, a span of nearly six years, Gough sought treatment only once for hip pain. Given the paucity of treatment records prior to the date last insured of December 31, 2002, there is substantial evidence supporting the Commissioner's determination that Gough's hip problem was not a severe impairment. The ALJ found that Gough's impairment was not severe as defined in <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984), and the lack of any medical treatment between 2001 and 2004 plainly constitutes substantial evidence supporting this conclusion. Gough argues, nonetheless, that subsequent records establish that he was disabled for disability insurance benefit purposes prior to 2003.

### III.

This case presents a different twist to the now familiar interim evidence issue. So-called interim evidence is evidence submitted to the Appeals Council following the ALJ's decision but before the Appeals Council makes a decision to grant or deny review.

In this case, the interim evidence consisted of a psychological evaluation from Dr. David Leen dated April 20, 2006 and medical records from the University of Virginia Medical Center concerning the period September 2, 2005 to April 10, 2006.

4

In the typical case, when the Appeals Council receives such interim evidence and denies the request for review, the Appeals Council notes the interim evidence and includes it in the administrative record. In many cases, the Appeals Council concludes that this interim evidence does not provide a basis for changing the ALJ's decision and denies the request for review. When that happens, a reviewing court must look at this interim evidence and decide whether "there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).

This case is procedurally irregular. There is no question that interim evidence was submitted to the Appeals Council as the cover letter enclosing and discussing it is part of the record. (R. 14-15) There is likewise no question that the Appeals Council considered this evidence, as the Notice of Appeals Council Action states as follows:

> The Appeals Council also considered the treatment records from the University of Virginia dated November 2005-April 2006, and the psychological assessment dated April 20, 2006 from David Leen, Ph.D. The Administrative Law Judge found that you were not disabled on or before December 31, 2002, the date you last met the insured status requirements of the Social Security Act. The new evidence is not material to the issue of whether you were disabled at a time when you met the insured status requirements.

(R. 6)

Despite this obvious consideration of this interim evidence by the Appeals Council, it is equally clear that this interim evidence from Dr. Leen and the UVa Medical Center was not inserted into the administrative record by the Appeals Council in this case.[2]

---

[2] While this evidence was not made part of the administrative record, Gough submitted the evidence to the undersigned for review as an exhibit to his summary judgment brief.

Gough argues that as the Appeals Council considered the merits of his May 12, 2006 submission, it was error for the Appeals Council not to place it in the administrative record. Even though the Appeals Council did not include the evidence in the administrative record, Gough argues that the case should be remanded under sentence four of 42 U.S.C. § 405(g) and the Fourth Circuit's opinion in <u>Wilkins</u> as there is a reasonable possibility that this evidence would have changed the outcome.[3]

The Commissioner argues that a district court lacks jurisdiction to review Appeals Council action, arguing that because the Appeals Council denied review, the final agency action was the decision of the ALJ. In essence, the Commissioner argues that a district court may not consider interim evidence submitted to the Appeals Council prior to its decision to review the case simply because the Appeals Council chooses not to include that evidence in the administrative record. Thus, the Commissioner argues that if there is a remand in this case to require the agency to evaluate the evidence from Dr. Leen and the UVa Medical Center, such a remand must be pursuant to sentence six of § 405(g).[4]

---

[3] Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

[4] Sentence six of 42 U.S.C. § 405(g) provides that "[t]he court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any

Case 6:07-cv-00018-NKM-mfu   Document 19   Filed 05/12/08   Page 6 of 13   Pageid#: 95

The social security regulations govern how the Appeals Council is to handle interim evidence presented to it. 20 C.F.R. § 404.976(b)(1) provides that:

> The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

In this case, the Notice of Appeals Council Action states that it "considered" the treatment notes from UVa and psychological assessment from Dr. Leen, but deemed it "not material to the issue of whether you were disabled at a time when you met the insured status requirements." (R. 6)

There are two questions presented by this appeal. First, under what sentence of § 405(g) should this interim evidence be evaluated for purposes of consideration of a remand? Second, does the evidence warrant a remand under either sentence?

## IV.

For sentence four of 42 U.S.C. § 405(g) to apply, the judgment of the court must be based "upon the pleadings and transcript of the record." As the interim evidence from Dr. Leen and UVa Medical Center were not included in the transcript of the record by the Appeals Council, the Commissioner argues that sentence four is inapplicable. Gough argues that he sent this evidence

---

case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."

7

to the Appeals Council for its consideration; and that the evidence, while not appearing in the record, is referenced in the record in the Notice of Appeals Council Action. Further, Gough argues that the Appeals Council did not return it to him in conformance with 20 C.F.R. § 404.976(b)(1).

Sentence six, on the other hand, requires a finding that the evidence be new, material and that there is good cause for the failure to incorporate such evidence in the record.

Sentence four applies in this case for a couple of reasons. First, although the Appeals Council did not include the interim evidence in the record, it plainly considered it and referred to it in its Notice of Appeals Council Action. This is not a case where there is no reference to the evidence in the record, as the Appeals Council obviously received the evidence from Dr. Leen and the UVa Medical Center and evaluated it before declining review. Because this evidence is referred to in the transcript of the record, the court has the authority under sentence four to consider it in deciding whether the Commissioner's decision is supported by substantial evidence. In Wilkins, the Fourth Circuit held that a reviewing court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." 953 F.2d at 96. In this regard, the court is not deciding whether the Appeals Council erred in not reviewing the decision of the ALJ; rather, the court is reviewing, under Wilkins, whether there is a reasonable possibility that the interim evidence submitted to the Appeals Council and considered by it would have changed the outcome. 953 F.2d at 956. In other words, as the Appeals Council obviously considered this evidence and referred to it in its Notice denying review, the court may consider this evidence under sentence four even though the Appeals Council did not order that it be made part of the record.

8

The failure to include this evidence obviously considered by the Appeals Council is, at the very least, puzzling and provides the second reason why sentence four, and not sentence six, applies to this case. If, as the Commissioner argues, sentence six applies, then the Appeals Council was required under 20 C.F.R. § 404.976(b)(1) to return the evidence not considered by it to Gough with an explanation as to why it did not accept the additional evidence and to advise Gough of his right to file a new application. There is no indication in the record that the Appeals Council followed these steps in declining to accept the evidence from Dr. Leen and the UVa Medical Center. Therefore, it does not appear that the strictures the Commissioner's regulations were followed in this instance. In not following the regulations and either including the interim evidence in the record or returning it to the claimant, the evidence from Dr. Leen and UVa Medical Center is in a sort of administrative limbo. While the Commissioner argues that this evidence may not be considered under sentence four because it was not made part of the record by the Appeals Council, it is difficult to see how the Appeals Council's failure to follow its own regulations regarding handling of such evidence can yield such a result.[5] Therefore, the evidence from Dr. Leen and UVa Medical Center must be evaluated under <u>Wilkins</u>.

---

[5] In this regard, it is curious that on the same day, May 10, 2007, that the Appeals Council issued its Notice of Appeals Council Action making reference to the Dr. Leen and UVa Medical Center records, it chose to include in the record two letters from Gough's counsel, but not the medical records. This is especially perplexing as one of those letters, dated April 14, 2006, consists of nothing more than a request by Gough's counsel to submit the UVa Medical Center records once they are available.

## V.

The next question presented is whether there is a reasonable possibility that the evidence from Dr. Leen and UVa Medical Center would have changed the outcome. Wilkins, 953 F.2d at 96. Review of these records confirms that such a reasonable possibility does not exist.

The UVa Medical Center records date from the period September 2, 2005 to April 10, 2006, more than two years following Gough's date last insured. Gough was seen at the UVa Health System Arthritis Clinic on September 2, 2005 concerning right hip pain, and immediately the question was raised why Gough had not had surgery previously. Gough was seen again in November, 2005 and tests were done to see whether he would be a surgical candidate for total hip replacement. This procedure was performed on April 10, 2006, apparently without complication. Nothing in the UVa records concerns the period prior to the date last insured.

Ten days after Gough's hip replacement, David Leen, Ph.D., performed a psychological assessment on Gough. The medical history taken by Dr. Leen, dated April 20, 2006, indicates that Gough "states that he used to hunt and fish but not since two years ago secondary to his hip problem. . . . He states that he used to socialize more extensively prior to two years ago when his current hip problem began." Gough's statement to Dr. Leen that his "current hip problem" began two years ago (circa 2004) is consistent with the fact that Gough sought no medical treatment between February, 2001 and May, 2004 for any hip problem. As such, Dr. Leen's records suggest that Gough's right hip problem was degenerative and only degraded to the point where he sought medical treatment for it on a sustained basis in May, 2004, well after his date last insured.

Of course, the point raised by Gough regarding Dr. Leen's records is not the reference to his physical problems alone. Rather, it is the assessment of his full scale IQ score at 61 and a GAF of 53. Gough did not raise the issue of his mental status in his application for benefits, there are no medical records in the transcript concerning a mental impairment, and the ALJ's opinion does not address any such issue. The record does reflect that Gough had a seventh grade education and his reading was very poor. (R. 209, 218) Gough argues that Dr. Leen's assessment of his mental capacity, combined with his physical impairments, establishes his disability from all work before 2003. Paragraph C of Listing 12.05 concerning mental retardation requires a valid verbal, performance or full scale IQ between 60 and 70 and a physical or other mental limitation imposing an additional and significant work-related limitation of function, and Gough argues that Listing 12.05(C) is met here.

The first requirement of Listing 12.05(C) is plainly met, assuming that a full scale IQ score of 61 obtained from testing done more than three years after the date last insured can be considered in connection with Gough's claim that he was disabled prior to 2003. In <u>Luckey v. U.S. Dep't of HHS</u>, 890 F.2d 666, 669 (4th Cir. 1989), the Fourth Circuit held that in the absence of evidence that the claimant's IQ score had changed, the fact that the claimant could barely read or write was a "clear manifestation of mental retardation before age twenty-two," quoting <u>Turner v. Bowen</u>, 856 F.2d 695, 699 (4th Cir. 1988). Here, as in <u>Luckey</u>, there is no evidence to suggest Gough's IQ had changed over the years, and the only evidence in the record regarding his mental acuity was that he left school in the 7th grade and could read only poorly. Similarly, in <u>Branham v. Heckler</u>, 775 F.2d 1271, 1274 (4th Cir. 1985), the court assumed that in the absence of any

evidence of a change in intellectual functioning, an IQ test taken in 1982 was valid three years earlier in 1979 at the time of claimant's back injury. The same assumption applies here.

The second aspect of Listing 12.05(C) concerns whether Gough had an additional and significant work-related limitation of function prior to 2003. As the Fourth Circuit has noted, the social security "regulations do not define a significant limitation, but an impairment does not have to be disabling in itself." Branham, 775 F.2d at 1273. An illness or injury imposes a significant limitation when its effect on the claimant's ability to work is more than slight or minimal. Pullen v. Bowen, 820 F.2d 105, 109 (4th Cir. 1987); Cook v. Bowen, 797 F.2d 687, 690 (8th Cir. 1986); Nieves v. Sec'y of HHS, 775 F.2d 12, 14 (1st Cir. 1985).

The second element of Listing 12.05(C) closely parallels a finding of a severe impairment under 20 C.F.R. § 404.1520(c). The second prong of Listing 12.05(C) requires "a physical or other mental impairment imposing an additional and significant work-related limitation of function," and a severe impairment is defined in § 404.1520(c) as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." See Nieves, 775 F.2d at 14.

As noted above, there is scant evidence of a severe impairment posed by Gough's hip problems prior to 2003. In particular, the fact that Gough only sought treatment for a hip problem on one occasion between July, 1998 and May, 2004 constitutes substantial evidence supporting the Commissioner's finding that Gough's hip issues did not rise to the level of a severe impairment prior to 2003. Because the standard for finding a severe impairment closely parallels a finding of a significant work-related limitation of function under the second prong of Listing 12.05(C), a finding that Gough did not have a severe impairment under § 404.1520(c)

12

compels the conclusion that Gough also cannot meet the second prong of Listing 12.05(C) to establish the existence of a hip impairment imposing a significant work-related limitation of function before 2003. The evidence in the record simply does not establish the existence of such an impairment prior to 2003.

As such, it is **RECOMMENDED** that the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be dismissed and stricken from the docket of the court.

The Clerk is directed to transmit the record in this case to Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 637(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of Court hereby is directed to send a copy of this Report and Recommendation to all counsel of record.

Enter this 12th day of May, 2006.

Michael F. Urbanski
United States Magistrate Judge

13

Case 6:07-cv-00018-NKM-mfu   Document 19   Filed 05/12/08   Page 13 of 13   Pageid#: 102